NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


PORTALP INTERNATIONAL SAS, a )
French corporation, )
                                       )
          Appellant, )
                                         )
v. )          Case No. 2D15-1676
                                         )
DANIEL ZULOAGA and PORTALP USA, )
INC., a Florida corporation, )
                                         )
          Appellees. )
                                         )
_____ )

Opinion filed December 18, 2015.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Collier County;
James R. Shenko, Judge.

Robert J. Alwine of Robert Allen Law,
Miami; and Alexander L. Palenzuela of
Law Offices of Alexander L. Palenzuela,
P.A., Miami, for Appellant.

William Diaz-Garcia and Steven V. Blount
of Blount Law, PL, Naples, for Appellee
Daniel Zuloaga.

No appearance for Appellee Portalp USA,
Inc., a Florida corporation.


BLACK, Judge.

Portalp International SAS challenges the trial court's order denying its motion to quash service of process, asserting that Daniel Zuloaga's attempt to serve it in France via Federal Express is invalid under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters article 10(a), November 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (Hague Convention). Portalp International argues that by the plain meaning of the text of article 10(a), the Hague Convention only permits the mailing of judicial documents after process has been served. We agree with the trial court's finding that the Hague Convention permits service of process by mail and affirm.

I.      Background

Mr. Zuloaga was the president of Portalp USA, LLC. After Portalp USA terminated Mr. Zuloaga's employment, he filed a lawsuit for breach of employment agreement against Portalp USA and its French majority shareholder, Portalp International.[1] To effect service of process on Portalp International, Mr. Zuloaga sent the summons and complaint by Federal Express to Portalp International's corporate office in Fontaine, France. A copy of the Federal Express "proof-of-delivery" printout was attached to the notice of filing proof of service indicating that these documents were delivered to Portalp International's corporate office and signed for by "BEL." In response to the notice, Portalp International entered a limited appearance and filed a motion to quash service of process for failure to comply with the requirements of the

---

[1]This appeal only concerns the method by which Mr. Zuloaga attempted to effect service of process on Portalp International in France. Portalp USA did not participate in this appeal.

Hague Convention.  Portalp International argued that the Hague Convention does not allow for service of process by mail and therefore that service of process was invalid. The trial court found Ackermann v. Levine, 788 F.2d 830 (2d. Cir. 1986), and Lestrade v. United States, 945 F. Supp. 1557 (S.D. Fla. 1996), which held that article 10(a) permits service of process by mail, to be persuasive, and it concluded that service of process was valid.

II.    Standard of review

"When a trial court rules on a motion to quash service of process, we review that ruling de novo."  Baker v. Stearns Bank, N.A., 84 So. 3d 1122, 1125 (Fla. 2d DCA 2012).  Likewise, we review de novo the trial court's interpretation of a treaty.  See Wigley v. Hares, 82 So. 3d 932, 940 (Fla. 4th DCA 2011) (quoting In re Application of Adan, 437 F.3d 381, 390 (3d Cir. 2006)).

III.    Discussion

Section 48.194(1), Florida Statutes (2014), provides, in part, that "[s]ervice of process on persons outside the United States may be required to conform to the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters."  "In Florida, the Hague Convention applies in all cases 'where there is occasion to transmit a judicial or extrajudicial document for service abroad.' "  Grupo Radio Centro S.A.B. de C.V. v. Am. Merch. Banking Grp., Inc., 71 So. 3d 151, 151 (Fla. 3d DCA 2011) (quoting Chabert v. Bacquie, 694 So. 2d 805, 812 (Fla. 4th DCA 1997)); see SDS-IC v. Fla. Concentrates Int'l, LLC, 157 So. 3d 389, 391 (Fla. 2d DCA 2015) ("Article 1 of the Hague Convention provides that it 'shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial

or extrajudicial document for service abroad.' " (quoting Hague Convention, supra, at 362)).  And where it applies, "compliance with the [Hague] Convention is mandatory." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988).

The sole issue raised by Portalp International on appeal is whether service of process by mail is permissible under article 10(a) of the Hague Convention.[2]  Article 10(a) of the Hague Convention states that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad."  Hague Convention, supra, at 363 (emphasis added).[3]  This is an issue of first impression in Florida,[4] though several circuits of the U.S. courts of appeals and several Florida federal district courts have considered the issue, resulting in a split of authority.  The issue has not been addressed by the U.S. Supreme Court or the Eleventh Circuit.

The prevailing view among the circuits of the U.S. court of appeals that

---

[2]Though Portalp International stated at the hearing on the motion to quash service of process that the Florida Rules of Civil Procedure do not permit service by mail absent consent from the receiving party, it did not present any argument in that regard and it does not address that issue on appeal.

[3]Article 21 of the Hague Convention requires each contracting state to indicate whether they object to article 10, and France has not objected to article 10. See Research Sys. Corp. v. IPSOS Publicite, 276 F.3d 914, 926 (7th Cir. 2002); France—Central Authority & practical information, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=authorities.details&aid=256 (last updated September 4, 2015).  Further, Portalp International has not raised the issue of whether Federal Express is a postal channel contemplated by the Hague Convention.

[4]In addressing a different issue arising under the Hague Convention, the Fourth District Court of Appeal stated, "We understand the clerk's notice and the appellant's citation not to be initial process but instead to be papers covered by [a]rticle 10(a) of the Hague Service Convention."  Chabert, 694 So. 2d at 812.

have addressed this issue is that article 10(a) permits service by mail, provided the destination country has not objected. See Brockmeyer v. May, 383 F.3d 798, 803 (9th Cir. 2004); Ackermann, 788 F.2d at 839; see also Research Sys. Corp. v. IPSOS Publicite, 276 F.3d 914, 926 (7th Cir. 2002); Koehler v. Dodwell, 152 F.3d 304, 308 (4th Cir. 1998). The courts in Brockmeyer and Ackermann looked beyond the text to the intention of the drafters and the purpose of the Hague Convention to reach this conclusion. Brockmeyer, 383 F.3d at 802-03; Ackermann, 788 F.2d at 839-40. Several Florida federal district court opinions are consistent with this line of authority. See, e.g., Geopolymer Sinkhole Specialist, Inc. v. Uretek Worldwide Oy, No. 8:15–cv–1690–T–36JSS, 2015 WL 4757937 (M.D. Fla. Aug. 12, 2015); TracFone Wireless, Inc. v. Unlimited PCS Inc., 279 F.R.D. 626 (S.D. Fla. 2012); Julien v. Williams, No. 8:10–cv–2358–T–24 TBM, 2010 WL 5174535 (M.D. Fla. Dec. 15, 2010); Conax Fla. Corp. v. Astrium Ltd., 499 F. Supp. 2d 1287 (M.D. Fla. 2007); Lestrade, 945 F. Supp. 1557.

Conversely, the Fifth and Eighth Circuits determined that article 10(a) does not permit service of process by mail and that article 10(a) only applies to the sending of post-service documents. Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 384 (5th Cir. 2002); Bankston v. Toyota Motor Corp., 889 F.2d 172, 174 (8th Cir. 1989). Relying on canons of statutory construction, these courts determined that the language of the Hague Convention was conclusive and reasoned that had the drafters intended to allow for service of process by mail they would have used the term "serve" or "service" in article 10(a) instead of the term "send" since forms of the term "service" were otherwise used throughout the Hague Convention. See Nuovo Pignone, 310 F.3d at 384; Bankston, 889 F.2d at 173-74. A number of Florida federal district

court opinions are consistent with this line of authority.  See, e.g., Intelsat Corp. v. Multivision TV LLC, 736 F. Supp. 2d 1334 (S.D. Fla. 2010); Arco Elecs. Control Ltd. v. Core Int'l, 794 F. Supp. 1144 (S.D. Fla. 1992); Wasden v. Yamaha Motor Co., Ltd., 131 F.R.D. 206 (M.D. Fla. 1990); McClenon v. Nissan Motor Corp., 726 F. Supp. 822 (N.D. Fla. 1989); In re MAK Petroleum, Inc., 424 B.R. 912 (Bankr. M.D. Fla. 2010).  Portalp International urges this court to adopt the position taken by the Fifth and Eighth Circuits and give effect to the plain meaning of the text of article 10(a).

"As a general matter, a treaty is a contract, though between nations.  Its interpretation normally is, like a contract's interpretation, a matter of determining the parties' intent."  See BG Grp. PLC v. Republic of Argentina, 134 S. Ct. 1198, 1208 (2014) (citations omitted).  "When interpreting a treaty, we 'begin with the text of the treaty and the context in which the written words are used.' "  Volkswagenwerk, 486 U.S. at 699 (emphasis added) (quoting Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 534 (1987)); see Gandara v. Bennett, 528 F.3d 823, 827 (11th Cir. 2008) ("[A] treaty must be interpreted as a whole in light of its object and purpose, including the preamble." (quoting Cornejo v. County of San Diego, 504 F.3d 853, 861 n.13 (9th Cir. 2007))).  "The clear import of treaty language controls unless application of the words of the treaty according to their obvious 'meaning effects a result inconsistent with the intent or expectations of its signatories.' "  In re Comm'rs Subpoenas, 325 F.3d 1287, 1294 (11th Cir. 2003) (quoting Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 180 (1982)), overruling on other grounds by Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).  As such, only where the "treaty text is ambiguous when read in context in light of its object and

purpose [should] extraneous sources . . . be consulted to elucidate the parties' intent."
In re Comm'rs Subpoenas, 325 F.3d at 1294.

The preamble of the Hague Convention provides that it was created to simplify and expedite the service of judicial and extrajudicial documents abroad. Hague Convention, supra, at 362; accord Grupo Radio Centro, 71 So. 3d at 151 ("The Hague Convention is a multilateral treaty that was formulated in 1964 . . . to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." (quoting Volkswagenwerk, 486 U.S. at 698)). Further, article 1, defining the scope, provides that the Hague Convention only applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad." Volkswagenwerk, 486 U.S. at 699 (emphasis added) (quoting Hague Convention, supra, at 362). This limiting language was included in the final text of the Hague Convention to address the delegates' criticisms that the language in the preliminary draft "suggested that the [Hague] Convention could apply to transmissions abroad that do not culminate in service." Volkswagenwerk, 486 U.S. at 701. Interpreting article 10(a) to apply only to post-service documents would be inconsistent with the Hague Convention's purpose and scope. Therefore, it is appropriate to consult extraneous sources such as "the history of the treaty, the negotiations, and the practical construction adopted by the parties" to determine the meaning of article 10(a). Wigley, 82 So. 3d at 935 n.1 (quoting Choctaw Nation of Indians v. United States, 318 U.S. 423, 431-32 (1943)); accord Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 134 (1989); see also Volkswagenwerk, 486 U.S. at 700 ("Other general rules of construction may be brought to bear on difficult or

ambiguous passages.").

In analyzing whether article 10(a) of the Hague Convention was intended to permit service by mail, the court in Brockmeyer considered various extraneous sources including commentaries on the history of the Hague Convention negotiations.

> According to the official Rapporteur's report, the first paragraph of [a]rticle 10 of the draft Convention, which "except for minor editorial changes" is identical to [a]rticle 10 of the final Convention, was intended to permit service by mail. A "Handbook" published by the Permanent Bureau of the Hague Convention, which summarizes meetings of a "Special Commission of Experts," states that to interpret [a]rticle 10(a) not to permit service by mail would "contradict what seems to have been the implicit understanding of the delegates at the 1977 Special Commission meeting, and indeed of the legal literature on the Convention and its predecessor treaties." As further evidence of the understanding of the parties at the time the Hague Convention was signed, the United States delegate to the Hague Convention reported to Congress that [a]rticle 10(a) permitted service by mail.

Brockmeyer, 383 F.3d at 802-03 (citations omitted); see Lozano v. Montoya Alverez, 134 S. Ct. 1224, 1233 (2014) ("It is our 'responsibility to read the treaty in a manner consistent with the shared expectations of the contracting parties.' " (quoting Olympic Airways v. Husain, 540 U.S. 644, 650 (2004))). The court reviewed the opinions of signatory countries to the Hague Convention, which reflected an "essentially unanimous view" that service by mail is permitted by the Hague Convention. Brockmeyer, 383 F.3d at 802; see also Abbott v. Abbott, 560 U.S. 1, 16 (2010) (citing El Al Isr. Airlines, Ltd. v. Tseng, 525 U.S. 155, 176 (1999) (holding that in interpreting a treaty, the opinions of other signatories are entitled to considerable weight)). Further, the court considered the position taken by the United States Government. See Abbott, 560 U.S. at 15 ("It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.' "

(quoting Sumitomo Shoji Am., 457 U.S. at 185)); Kolovrat v. Oregon, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight.").  Moreover, "[t]he United States government, through the State Department, has specifically disapproved the Eighth Circuit's holding in Bankston," and "State Department circulars also indicate that service by mail is permitted in international civil litigation."  Brockmeyer, 383 F.3d at 803.

It is apparent that interpreting article 10(a) to permit service of process by mail is consistent with the intent and expectations of the signatories.  This interpretation is also "consonant with the principles deemed controlling in the interpretation of international agreements" to avoid "a narrow and restricted construction."  See Factor v. Laubenheimer, 290 U.S. 276, 293 (1933).  Furthermore, in reaching the opposing conclusion that article 10(a) does not permit service of process by mail, the courts in Nuovo Pignone and Bankston relied on canons of statutory construction, a practice the Supreme Court has cautioned against.  See Lozano, 134 S. Ct. at 1232-33 (" 'A treaty is in its nature a contract between . . . nations, not a legislative act.'  That distinction has been reflected in the way we interpret treaties.  It is our 'responsibility to read the treaty in a manner consistent with the shared expectations of the contracting parties.' " (first quoting Foster v. Neilson, 2 Pet. 253, 314 (1829) (Marshall, C.J.); then quoting Husain, 540 U.S. at 650)).

Portalp International also emphasizes the concern addressed by the court in McClenon that interpreting article 10(a) to permit service of process by mail would render the "vast bulk of the [Hague] Convention . . . useless" because allowing service

of process by mail would circumvent the rather involved procedure to effect service of process otherwise provided for in the Hague Convention. See McClenon, 726 F. Supp. at 826 (citation omitted). However, effecting service of process as provided for in article 10(a) is only permitted if the destination country has not objected. See Hague Convention, supra, at 363. And given the express limitation of the Hague Convention's scope, which comports with its purpose, it is article 10(a) that would be rendered "superfluous" if not interpreted to permit service by mail. Cf. Ackermann, 788 F.2d at 839 (quoting Shoei Kako v. Superior Court, 109 Cal. Rptr. 402, 411 (Cal. App. Dep't Super. Ct. 1973)).

IV.    Conclusion

We are persuaded by the Brockmeyer/Ackermann line of authority and conclude that article 10(a) of the Hague Convention permits service of process by mail. Therefore, we affirm the trial court's order denying Portalp International's motion to quash service of process.

Affirmed.


LaROSE and KHOUZAM, JJ., Concur.